**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CYNTHIA BYERSON, KRISTINA M. CARDWELL, and PAUL CURLEY, Individually and on behalf of others similarly situated,

Plaintiffs,

v. Civil Action No. 3:06cv582

EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the joint motion of Defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") to transfer venue or, alternatively, to stay proceedings (Doc. No. 28).[1] For the reasons set forth below, the motion is granted in part.

**I. BACKGROUND**

Plaintiffs filed this class action on August 30, 2006 on behalf of themselves and a nationwide class of consumers, asserting claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Plaintiffs allege that the Defendants, three consumer credit reporting agencies, improperly reported the credit limits for Capital One Bank ("Capital One") credit card holders, and, in so

---

[1] Trans Union LLC neither joined nor opposed this motion.

doing, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure accuracy in the preparation of consumer credit reports. (Compl. ¶¶ 11, 29.)

The Plaintiffs' allegations are straight-forward. Capital One, as is its right, does not provide consumer reporting agencies with the credit limits associated with individual Capital One credit cards. (Id. at ¶¶ 9-10.) Plaintiffs allege that the Defendants improperly elected not to leave the "credit limit" field in consumer credit reports blank and, instead, decided to report the highest balance previously reached on the credit card as that card's "credit limit." (Id. at ¶ 11.) Thus, say the Plaintiffs, the reported credit limit is inaccurate, and, as a consequence, the Defendants have damaged the credit history of Capital One credit card holders by reporting an inaccurate credit limit. (Id. at ¶¶ 12.)

On June 15, 2006, more than two months before the Plaintiffs filed this action, William A Harris, Sr. filed three very similar class action complaints in the District of South Carolina (the "Harris actions" and the "Harris complaints"). (See Defs.' Corrected Mem. in Supp. of Joint Mot. to Transfer Venue ("Defs.' Mem.") at 1.) Like the Plaintiffs here, Harris has sued Equifax, Experian, and Trans Union LLC ("Trans Union") for violations of 15 U.S.C. § 1681e(b). (See Harris Complaints ¶¶ 1, 8.) And, like the Plaintiffs here, Harris alleges that Capital One chooses not to

provide Equifax, Experian, and Trans Union with the credit limits associated with individual Capital One credit cards, and that Equifax, Experian, and Trans Union inaccurately report those credit limits by reporting a credit limit of $0 or reporting no credit limit at all. (See id.) According to Harris, the reporting practices of the Defendants adversely affects the credit scores of Capital One credit card holders because credit scoring software later substitutes the highest balance reached on Capital One credit cards for the "credit limit." (See id. at ¶ 1.)

In oral arguments on the transfer motion, it was disclosed that Harris had proffered amended complaints (the "amended Harris complaints") and had moved for leave to file and serve them. Subsequently, it was made known that, without objection, the District Court had approved the filing of the amended Harris complaints in two of the three Harris actions (against Experian and Equifax). Trans Union has advised this Court that it intends conditionally to oppose the filing of the amended complaint against it in the Harris actions because of the pendency of the transfer motion in this action.

While the essential claims in the original and amended Harris complaints remain the same, the complaints differ in their proposed class definitions. According to the parties here, the proposed class definitions in the original Harris complaints would have allowed for overlap between the putative classes here and in

Harris; however, changes contained in the amended Harris complaints eliminate that potential for overlap. First, the amended Harris class definition excludes consumers for whom a credit limit in excess of $0 was reported. (See Amended Harris Complaints ¶ 13.) Here, on the other hand, the proposed class definition would include only consumers who had their high balance (nearly always greater than $0) substituted for their credit limit. (Compl. ¶ 19.) Second, the amended Harris complaints eliminate a provision from the original Harris class definition that might have resulted in overlap between the putative Harris class and the putative class here. (See Harris Complaints ¶ 13, part (b).) Finally, the amended Harris complaints specifically exclude from the Harris action any consumers (like those here) who already have commenced a similar legal action against Experian, Equifax, or Trans Union. (See Amended Harris Complaints ¶ 13.) Therefore, although the gravamen of the claims here and in Harris remains the same – that the Defendants inaccurately report credit limits for Capital One credit card holders, thereby violating 15 U.S.C. § 1681e(b) – the amended Harris complaints make the putative class members quite different.

Nevertheless, because the Harris complaints remain so similar to the complaint in this action, Equifax and Experian move to transfer this action to the District of South Carolina where the actions can be consolidated under Federal Rule of Civil Procedure

42.[2] Equifax and Experian argue that transfer will prevent duplicative litigation in two different districts, and that the first-to-file rule supports their transfer motion. (Defs.' Mem. at 4.) The Plaintiffs oppose the transfer motion, arguing that their choice of venue, along with the convenience of the witnesses and parties, counsel against transfer in this case. (Pls.' Mem. in Opp'n to Defs.' Mot. to Transfer Venue ("Pls.' Mem.") at 4-5.)

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts have discretion under § 1404(a) "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Samsung Electronics Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 715 (E.D. Va. 2005). Equifax and Experian, as the movants, have the burden to show that transfer is proper. Reynolds Metals Co. v. FMALI, Inc., 862 F. Supp. 1496, 1501 (E.D. Va. 1994).

In exercising its discretion under § 1404(a), a district court must first determine whether the claims might originally have been brought in the transferee forum. Koh v. Microtek Int'l, Inc., 250

[2] From statements in briefing and argument, the Court understands that Experian and Equifax intend to move for consolidation if transfer is granted and that Trans Union intends either to join, or to refrain from opposing, such a motion.

F. Supp. 2d 627, 630 (E.D. Va. 2003). Once the district court determines that transfer is possible, the court must next "consider and balance" several factors when deciding whether transfer is warranted, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

Samsung, 386 F. Supp. 2d at 715 (citations omitted). While each of those factors may be weighed, "[t]he principal factors to consider ... are plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice." Id. at 716.

Because the statute provides no guidance as to the weight given each of the factors listed above, a court's decision "necessarily must turn on the particular facts of each case." Id. (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847 at 370). Ultimately, "the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Id. This motion to transfer will be resolved according to these precepts.

**A. Might An Action Against The Defendants Have Been Brought In The District Of South Carolina?**

Plaintiffs argue that this action could not have been filed in the District of South Carolina because neither Experian nor Equifax resides in South Carolina for purposes of 28 U.S.C. § 1391(b).[3] (Pls.' Mem. at 3.) In support of their argument, Plaintiffs note that Experian and Equifax have their principal places of business in states other than South Carolina. (Id.)

Plaintiffs fail to recognize, however, that, under 28 U.S.C. § 1391(c), "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," and that personal jurisdiction is not tied to the location of a corporation's home office. See, e.g., Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-15 (1984) (requiring continuous and systematic contacts, not physical plant, for general personal jurisdiction over corporations). Experian and Equifax argue that, as "nationwide credit reporting agencies," all three Defendants are subject to personal jurisdiction in South Carolina, and admit to "significant contacts with the District of South Carolina" such that all three Defendants "'can reasonably anticipate being haled into court'" in South Carolina. (Reply of Defs. in Supp. of Their Mot. to Transfer

---

[3] The pertinent provision of § 1391(b) directs that federal question actions, like this one, may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State."

Venue ("Defs.' Reply") at 4 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Plaintiffs do not challenge that contention, and do not argue that any of the three Defendants here lack the "continuous and systematic" contacts necessary for general personal jurisdiction in South Carolina (where the related actions have been pending against all three Defendants since June 15, 2006). Indeed, the Plaintiffs' argument here appears to be based only on a misreading of 28 U.S.C. § 1391. Because personal jurisdiction has gone unchallenged by these same three defendants in South Carolina, and because personal jurisdiction is not contested by the Plaintiffs, the Court has no difficulty concluding that the Defendants are residents of South Carolina for purposes of 28 U.S.C. § 1391(b). Therefore, this action could originally have been filed in the District of South Carolina, and hence may be transferred to that District under 28 U.S.C. § 1404(a).

**B. Assessing The § 1404(a) Factors**

Because venue would originally have been proper in the District of South Carolina, the Court must now consider the various § 1404(a) factors to determine whether a transfer to that district is warranted.

**1. Plaintiffs' Choice Of Venue**

The plaintiff's choice of venue is "typically entitled to substantial weight." Samsung, 386 F. Supp. 2d at 716 (internal

quotations omitted). Such deference is especially appropriate where, as here, plaintiffs do not choose a foreign forum or one bearing little or no relation to the cause of action.[4] Reynolds, 862 F. Supp. At 1501. However, courts often give less weight to the plaintiff's choice of forum in class actions. See, e.g., In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998). In class actions, "the named plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." Eichenholtz v. Brennan, 677 F. Supp. 198, 202 (S.D.N.Y. 1988) (citing Koster v. Lumbermens Mut. Casualty Co., 330 U.S. 518, 524 (1947)). But here, the Plaintiffs' choice of forum is amenable to inexpensive discovery and trial because the forum is home both to the Plaintiffs and to key non-party witnesses. Where that is the case, a plaintiff's choice of forum is entitled to significant weight that is not materially diminished merely because the case is a class action.

**2. Convenience Of The Parties**

Experian and Equifax do not argue strenuously that party convenience favors transfer. They note that "it is plainly more convenient for this litigation to proceed in a venue where months

[4] Each of the named Plaintiffs resides in Virginia, and one resides within the Richmond Division of this District. (See Compl. at ¶ 4.)

of work on the issues in the case have already been accomplished," but that work has only been done by the Defendants in this action, not the Plaintiffs. (Defs.' Reply at 15.) The named Plaintiffs here are each Virginia residents who would be forced to travel to South Carolina to press their claims, and Experian and Equifax offer no argument as to why South Carolina is a more convenient forum for the Plaintiffs. Thus, transfer would, at most, "only shift the balance of inconvenience from defendant[s] to plaintiffs" and therefore "does not militate persuasively in favor of transfer." <u>Bd. of Tr., Sheet Metal Workers Nat'l Fund v. Baylor Heating and Air Conditioning</u>, 702 F. Supp. 1253, 1260 (E.D. Va. 1988).

In addition, "the party convenience factor includes assessment of the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." <u>Samsung</u>, 386 F. Supp. 2d at 717 n.13. At this early stage of litigation and on the limited record that has been made on this factor, it is difficult to assess what proof will be required and what witnesses are likely to testify, so it is also difficult to assess the costs of obtaining witness attendance or the importance of compulsory process. More to the point, there is no compelling evidence that South Carolina is a better forum when considering these factors.

First, the availability of compulsory process in this District militates against transfer. The Eastern District of Virginia is home to potential witnesses from Capital One, and perhaps witnesses from other corporations. (See Decl. of Leonard A. Bennett in Supp. of Pls.' Opp'n to Mot. to Transfer Venue ("Decl. of Leonard A. Bennett") at ¶¶ 9-10.) In addition, the Plaintiffs name other potential witnesses outside this District who may nonetheless be within the Court's subpoena power, although that assertion may prove to be incorrect.[5] (Id. at ¶¶ 11-12.) While Experian and Equifax argue that potential witnesses are "scattered throughout the country," none appear to reside in South Carolina. Given that Plaintiffs have identified potential witnesses within this Court's subpoena power, the availability of compulsory process militates against transfer.

Second, access to sources of proof also weighs against transfer. It seems likely that Capital One will be a significant source of proof in this action, and its offices near Richmond are conveniently located for litigation in this District. (See Decl. of Leonard A. Bennett at ¶ 4.) Experian and Equifax have pointed

[5] Federal Rule of Civil Procedure 45(b)(2) places the limits of a district court's subpoena power at the boundaries of that court's district, or at 100 miles from the location of the deposition, hearing, trial, production, or inspection specified in the subpoena. See also 9A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 2461 at 61-65. It is not entirely clear that all witnesses in Washington, D.C. and Maryland are within this Court's subpoena power.

to no sources of proof located in South Carolina, so access to sources of proof is not improved by transfer.

Finally, the cost of obtaining witnesses appears to be neutral if witnesses are, as Experian and Equifax claim, "scattered throughout the country," because it will likely be just as expensive for them to travel to South Carolina as it would be to Richmond. (Defs.' Mem. at 8.) Moreover, the cost of obtaining witnesses does not favor transfer if, as Plaintiffs contend, the key witnesses are from Capital One and other companies are located in or near the Eastern District of Virginia. (Decl. of Leonard A. Bennett at ¶¶ 9-12.) Apart from the locations of potential witnesses, it can be surmised that the overall cost of obtaining witnesses would probably be reduced by consolidating this action with those pending in South Carolina (assuming that some witnesses will be used in all of the actions). However, Experian and Equifax have not "provide[d] the 'requisite particularity' about the expected witnesses and their potential testimony to accord this factor much weight" in their favor. Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc., 20 F. Supp. 2d 948, 955 (E.D. Va. 1998).

**3. Convenience Of Witnesses**

The movants have "the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality

of evidence and the degree of inconvenience." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636. Experian and Equifax have given the Court little information on which to make an assessment. They claim that they are "likely to have witnesses" in California, Texas, Illinois, Georgia, and Minnesota, but the record does not disclose the identity of those witnesses or what they might say and it is not obvious why those witnesses will find travel to South Carolina more convenient than travel to Richmond, or, for that matter, whether live testimony would be necessary in all cases. (Defs.' Mem. at 8.) Therefore, the Court finds no reason of record why witness convenience would be served by transferring this action, apart from the obvious fact that travel to only one location would be more convenient than travel to two (again, assuming that some witnesses will be used in all of the related actions). Because the Plaintiffs have identified potential witnesses within or near the Eastern District of Virginia, and Experian and Equifax have not provided sufficient evidence to show any witness inconvenience, this factor weighs against transfer.

**4. Interest Of Justice**

Finally, the Court must consider the interest of justice. In some cases, "the interest of justice may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction." Samsung, 386 F. Supp. 2d at 716 (quoting 15 Wright, Miller & Cooper, Federal Practice and

Procedure: Jurisdiction 2d § 3847 at 370). The interest of justice "encompasses public interest factors aimed at 'systemic integrity and fairness.'" Id. at 721. Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments. See id. Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law. Id. at n.16.

Here, with respect to fairness, Plaintiffs contend that docket conditions in the Eastern District of Virginia and this Court's knowledge of the applicable law both counsel against transfer. (Pls.' Mem. at 10.) However, Plaintiffs offer no evidence respecting docket conditions in the District of South Carolina, and, because this action arises under federal law, this Court cannot be presumed to have greater knowledge of the applicable law than does the federal court in South Carolina. See 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854 at 469 (noting that knowledge of applicable law is not a factor to be considered when an action arises under federal law).[6] While the Plaintiffs' arguments respecting fairness are unavailing, the fairness factors are not particularly important here because

[6] In any event, the mere fact that this district has a high volume of cases under the Fair Credit Reporting Act does not warrant a different result.

Experian and Equifax do not rely on those issues in urging transfer.

Instead, Experian and Equifax urge transfer primarily to promote judicial economy and to avoid inconsistent judgments. Experian and Equifax argue that the first-to-file rule requires transfer of this action to the District of South Carolina, where three related actions are pending. (See Defs.' Mot. at 4.) The existence of a related action in a different judicial District and the first-to-file rule are sometimes analyzed separately, but the policies served by transfer are similar in both instances. See Samsung, 386 F. Supp. 2d at 721-25 (analyzing first-to-file rule separately from discussion of related action). Moreover, both are properly considered as components of the interest of justice. See id.

The first-to-file rule states that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3rd Cir. 1988) (citations omitted). The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources. Samsung, 386 F. Supp. 2d at 724. For purposes of the first-to-file rule, the actions being assessed need not be identical if there is substantial overlap with respect to the issues and parties. See Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir.

1997). But, mere similarity of claims is not sufficient to invoke the first-to-file rule.

Experian and Equifax point to two instances, somewhat similar to this case, in which district courts have transferred class actions to districts where related class actions were pending. See Bunch v. W.R. Grace & Co., No. Civ. A. 04-218-DLB, 2005 WL 1705745 (E.D. Ky. July 21, 2005); Reisman v. Van Wagoner Funds, Inc., No. Civ. A. 02-012-SLR, 2002 WL 1459384 (D. Del. June 7, 2002). In Bunch, unlike the case here, the court found no factors militating against transfer, but noted that the interest of justice factors, including the first-to-file rule, were "dispositive" in deciding to transfer a class action from the Eastern District of Kentucky to the District of Massachusetts. 2005 WL 1705745 at *3. The court determined that consolidation with a related class action was likely, and that "the resultant economical and procedural 'savings' would ... be tremendous." Id. at *4. In Reisman, the court relied primarily on the first-to-file rule to transfer a class action from the District of Delaware to the Eastern District of Wisconsin, where related class actions pre-dated the Reisman action by two weeks. 2002 WL 1459384 at *2. The Reisman court ordered the transfer to "promote judicial economy and consistency of results." Id. Bunch and Reisman are instructive, even though the facts in those cases differ considerably from those presented here.

Having reviewed the complaint here and those filed in the Harris actions (the original and amended complaints), the Court concludes that, wholly apart from the first-to-file rule, transfer of this class action to the District of South Carolina would promote judicial economy and consistency of results. The class complaints are quite similar, involving the same provision of federal law and the same basic conduct by the same three defendants. To be sure, there are differences between this action and those pending in South Carolina, but the similarities are more significant than are the differences. Given those similarities, it is essential to avoid any risk of inconsistent rulings on class action issues, such as composition of classes and sub-classes. It is thus preferable that one court assess the factors that point to factual and legal overlap and sort out the class action issues that will arise in each of the related actions. In that way, the rights of all potential class members can be fully protected and the responsibility of defendants *vis a vis* the putative class members can be properly identified and allocated.

The importance of litigating these related actions in one court is not diminished by the differences in the proposed class definitions. In fact, in this class action case, the differences may make transfer of this action even more important. Because the essential claims here and in Harris are so similar, a single district court hearing each of the related actions will be able to

ensure that all consumers adversely affected by the practices complained of will be protected, and that none of their claims will fall through the cracks that may exist between the classes that ultimately are certified.

Moreover, it is not unusual that class actions are resolved by settlement, and the settlement process can be complicated and made burdensome, and even frustrated, if two courts are attempting to deal with issues of the sort here involved, particularly with the degree of overlap here presented.

In this class action, and considering this record, the interest of justice points strongly in favor of transfer. That is the case even though Equifax and Experian have not met their burden as to the other § 1404 factors. The interest of justice weighs particularly heavily here because class actions so significantly implicate the rights of persons who are not actually before the court. Thus, even though, as to the class plaintiffs, Equifax and Experian have not established that the other convenience factors, considered individually, warrant transfer, consideration of systemic integrity and fairness outweigh the other factors in this class action.[7]

---

[7] Here, as in Samsung, there is a strong issue of systemic integrity and fairness that supports application of the interest of justice factor as the dispositive consideration in the transfer calculus.

**CONCLUSION**

In some cases, "the interest of justice may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction." Samsung, 386 F. Supp. 2d at 716 (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847 at 370). This is just such a case. The Plaintiffs' choice of forum, the convenience of the parties, and the convenience of the witnesses each weigh against transfer, but not so strongly that they outweigh the interest of justice.

For the foregoing reasons, the motion of Experian and Equifax to transfer this action (Docket No. 28) is GRANTED, and this action is hereby transferred to the District of South Carolina. The alternative motion by Experian and Equifax to stay these proceedings (Docket No. 28) is DENIED as moot.

It is appropriate for the transferee court to determine which counsel is best suited to represent the class in this action. Hence, Plaintiff's Motion to Appoint Interim Class Counsel (Docket No. 17) is best left for resolution by that court. Defendant Experian Information Solutions, Inc.'s Motion for Protective Order (Docket No. 42) also is best resolved by the transferee court, which has presided over discovery for some time already.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record, to the Clerk of the

United States District Court for the District of South Carolina, and to the Honorable G. Ross Anderson, Jr., United States District Judge for the District of South Carolina.

It is so ORDERED.

/s/

Robert E. Payne
United States District Judge

Richmond, Virginia
Date: December 20, 2006